**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FIRST COMMERCE, LLC,<br><br>    Plaintiff<br><br>v.<br><br>SHECK GAMING, INC. and NOEL C. SHECKELLS,<br><br>    Defendants | 2:16-cv-00573-JAD-GWF<br><br>**Order Denying Defendant's Motion for Summary Judgment and Granting the Parties' Joint Request for a Settlement Conference**<br><br>[ECF Nos. 20, 28] |

    First Commerce, LLC sues Sheck Gaming, Inc. for breach of contract and Noel Sheckells for breach of guaranty arising from a 61-month restaurant-equipment lease for Sheck Gaming that Sheckells personally guaranteed.[1] Sheckells now moves for summary judgment, arguing that the statute of limitations on both claims is four years and that it has run. Sheckells also argues that he was relieved of any liability as a guarantor when the lease was amended.[2] I deny Sheckells's motion for summary judgment because First Commerce's claims are governed by a six-year statute-of-limitations period, and it appears that the claims are timely; and the contract unambiguously states that Sheckells's personal liability survived the lease amendment. I also find that this case is suitable for a settlement conference, so I grant the parties' joint motion for a settlement conference and refer this case to the magistrate judge to schedule one.

---

[1] ECF No. 1.

[2] ECF No. 20.

1 **Background**

2  Sheck Gaming entered into a 61-month restaurant-equipment lease with Triad Leasing &
3  Financial, Inc. in 2006.[3] Noel Sheckells, the president of Sheck Gaming, signed the lease on
4  behalf of the company and personally guaranteed its obligations under the lease.[4] The parties
5  amended the lease twice to alter the payment arrangements.[5] Under the second amendment,
6  installment payments were due each month beginning July 3, 2009, and ending March 3, 2013.[6]
7  After the amendments, Triad Financing assigned the lease and guaranty to First
8  Commerce.[7] When Sheck Gaming fell behind on its lease payments, First Commerce sent a
9  letter to Sheck Gaming on February 23, 2010, demanding that it pay the outstanding balance due
10 under the lease.[8] By April 26, 2010, Sheck Gaming had brought the lease current through March
11 3, 2010, and paid part of the installment due for the month of April.[9] When Sheck Gaming's
12 restaurant went out of business, Sheckells began making only small payments to First Commerce
13 in amounts ranging from $100 to $300 until March 12, 2012.[10] First Commerce filed suit on
14 March 15, 2016, alleging two claims: breach of contract against Sheck Gaming and breach of
15 guaranty against Sheckells.[11]

---

[3] ECF No. 20-2.

[4] *Id*.

[5] *Id*. at 10–12.

[6] ECF No. 20-2 at 12.

[7] ECF No. 21-4 at 2.

[8] ECF No. 21-5 at 2.

[9] ECF No.21 at 3.

[10] ECF No. 20-3 at 6–14.

[11] ECF No. 1.

**Discussion**

**A.     Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13] If reasonable minds could differ on material facts, summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[14]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[15] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[16]

**B.     Sheckells's failure to plead the statute-of-limitations defense in his answer does not preclude him from arguing the defense because First Commerce has not shown prejudice from the omission.**

Affirmative defenses, like the assertion that a claim is barred by the statute of limitations, must be raised in a defendant's initial pleading.[17] When a defendant fails to plead an affirmative

---

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[14] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[16] *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[17] FED. R. CIV. P. 8(c).

defense in his answer, cannot raise it as a ground for summary judgment if doing so would prejudice the plaintiff.[18] First Commerce does not claim any prejudice here, so I will consider the merits of Sheckells's statute-of-limitations argument.[19]

**C.    First Commerce's claims fall within the applicable six-year limitations period.**

Sheckells argues that NRS 11.190(2)(a)'s four-year limitations period applies and bars First Commerce's claims. First Commerce contends that it is NRS 11.190(1)(b)'s six-year limitations period that applies, making both of its claims timely.[20]

**1.    First Commerce's claims are subject to a six-year limitations period.**

NRS 11.190(2)(a) governs an "action on an open account for goods, wares and merchandise sold and delivered."[21] NRS 11.190(1)(b), on the other hand, applies when an action is based upon a "contract, obligation, or liability founded upon an instrument in writing."[22] NRS 11.190(1)(b)'s six-year limit applies to First Commerce's claims because First Commerce sues on a written contract for the lease of restaurant equipment.[23] Sheckells argues that this is not a written-contract case because his personal guarantee did not survive the lease amendments,[24] but

---

[18] *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).

[19] *Id.*

[20] Even though the contract calls for Oregon law to apply, ECF No. 20-2 at 3, ¶ 18, both parties argue for Nevada law. Like Nevada, Oregon has a six-year limitations period and treats installment-contract breaches the same (i.e., each failure to pay is a new breach and the statute of limitations runs from each new breach). *See, e.g.*, *Fed. Recovery of Washington, Inc. v. Wingfield*, 986 P.2d 67, 71 (Or. 1999) (finding that, for installment contracts, a six-year statute of limitations applies and begins to run from the date each payment is missed); *Clayton v. Gardner*, 813 P.2d 997, 999 (Nev. 1991) (holding that the statute of limitations "begins to run only with respect to each installment when due"). So the result here is the same whether I apply Nevada or Oregon law.

[21] Nev. Rev. Stat. Ann. § 11.190(2)(a).

[22] Nev. Rev. Stat. Ann. § 11.190(1)(b).

[23] ECF No. 20-2 at 2.

[24] ECF No. 22 at 3.

his defense does not alter the fact that First Commerce's claims are founded on a written instrument, triggering the six-year period of NRS 11.190(1)(b).

### 2. First Commerce's claims are timely.

NRS 11.200 provides that the limitations period begins to run from the date of "the last transaction or the last item charged or last credit given; and whenever any payment on principal or interest has been or shall be made upon an existing contract . . . the limitation shall commence from the time the last payment was made."[25] When a contract requires installment payments, the statute begins to run when each installment is due, unless the lender has and exercises its ability under an acceleration clause to render all payments due at once.[26]

Sheckells argues that the limitations period on First Commerce's claims began to run on February 23, 2010, because that is the date that he received a demand letter from First Commerce telling him the lease was in default.[27] Sheckells appears to interpret this letter as having the effect of causing the whole obligation to mature at once. But the letter explicitly requires payment only of all "past due amounts" (as Sheckells himself admits[28]) without any reference to the remaining balance on the lease. So this letter cannot be reasonably interpreted as accelerating the payment obligations.[29] And neither the lease agreement nor any amendment to it contains an automatic acceleration clause.[30] Because the payment obligations were not accelerated, each

---

[25] NEV. REV. STAT. ANN. § 11.200.

[26] *Clayton*, 813 P.2d 999; *Blacks Law Dictionary* (10th ed. 2014) (defining acceleration clause as "a loan-agreement provision that requires the debtor to pay off the balance sooner than the due date if some specified event occurs, such as failure to pay an installment or to maintain insurance").

[27] ECF No. 20.

[28] *Id*. at 5.

[29] ECF No. 20-3 at 2.

[30] The only clause that comes close is paragraph 17(b), but it merely provides the lessor with the **option** to sue in the event of default and seek all past due and future obligations. *See* ECF No. 20-2 at 3, ¶17(b).

failure to timely pay constitutes a separate breach, and the limitations period begins to run from each breach.[31]

Under the terms of the second amendment, installment payments were due each month beginning July 3, 2009, and ending March 3, 2013.[32] Because First Commerce filed its complaint on March 15, 2016, its claims can reach back—absent tolling—to breaches that occurred on or after March 15, 2010. Although Sheck Gaming initially defaulted on the lease prior to March 15, 2010, Sheck Gaming made five payments between February 25, 2010, and April 26, 2010, bringing the lease obligations current through March, 2010.[33] First Commerce's claims thus fall within the applicable limitations period.[34] I therefore deny Sheckells's motion for summary judgment on statute-of-limitations grounds.[35]

**D.   Sheckells's failure-to-mitigate-damages argument was improperly raised and will not be considered.**

Sheckells argues for the first time in his reply brief that First Commerce's failure to repossess or accept surrender of the leased equipment amounts to a failure to mitigate damages for which summary judgment should be granted.[36] Because this argument was not raised in Sheckells's motion for summary judgment, and the delay in raising this argument deprived First

---

[31] *Clayton*, 813 P.2d at 999.

[32] ECF No. 20-2.

[33] ECF No. 21 at 3.

[34] ECF No. 21 at 3.

[35] In his reply brief, Sheckells asks for leave to amend his answer to expressly include the statute-of-limitations defense. Because I am overlooking this omission for purposes of this motion, I deny the request as moot. It is also fatally late. Sheckells makes this request well after the deadline to amend expired (*see* scheduling order at ECF No. 11) and fails to demonstrate any excusable neglect. *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (holding excusable neglect is a determination that will only be granted if the failure to timely file a motion is attributed to negligence and would be an equitable decision for the case).

[36] ECF No. 22 at 5–6.

Commerce of a fair opportunity to respond to it, I do not consider it.[37]

**E.     Sheckells remains obligated under his guaranty.**

Sheckells argues that, because he was not specifically named in his individual capacity in the amendments to the lease, he no longer bears responsibility as a personal guarantor.[38] He then argues that First Commerce is the wrong party to bring this case.[39] First Commerce agrees that Sheckells is not a party to the amendments or the lease terms themselves, but argues that this does not matter because it is not suing him for breach of the lease terms.[40] Instead, First Commerce sues Sheckells in his capacity as the personal guarantor of Sheck Gaming's obligations under the lease. The lease and the guaranty are two separate contracts under Nevada law.[41] The fact that Sheckells is not named as a party to the lease is therefore irrelevant.[42]

First Commerce also argues that the plain language of the guaranty keeps Sheckells on the hook despite any amendment to the lease agreement itself.[43] Under Nevada law, contract interpretation is a question of law.[44] And whether a contract is ambiguous is also a question of

---

[37] *State of Nev. v. Watkins*, 914 F.2d 1545, 1559–60 (9th Cir. 1990) (disregarding issues raised for the first time in a reply brief).

[38] ECF No. 20 at 6–7.

[39] ECF No. 22 at 5. Sheckells claims that because First Commerce failed to provide the original assignment documents that demonstrate Triad Financing gave it the lease, First Commerce has failed to establish itself as the proper plaintiff. Sheckells failed to raise this argument in his original summary-judgment motion, so I do not consider it. *State of Nev.*, 914 F.2d 1159–60.

[40] ECF No. 21 at 9.

[41] *Bank of Nevada v. Friedman*, 420 P.2d 1, 5 (Nev. 1966) (holding that "a contract of guaranty is a separate contract, and is to be separately considered").

[42] *Id*.

[43] ECF No. 21 at 10.

[44] *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).

law.[45] A contract is ambiguous when its meaning is obscure or its terms could have multiple meanings.[46]

The language in the personal guaranty clause unambiguously provides that "[e]xtensions, renewals, or modifications of the lease shall be binding upon the Guarantor."[47] When the lease was amended, it was not an entirely new contract as Sheckells presumes, but merely a "modification"[48] to the already existing one. Based on the express language stating that Sheckells will remain personally liable through any modification to the lease, I find that no further guaranty clause was necessary, and Sheckells remains responsible as the guarantor.

### F.  Settlement conference

Finally, the parties jointly move for a settlement conference.[49] The local rules of this district authorize me to "set any appropriate civil case for settlement conference . . . ."[50] I find that this case is suitable for a settlement conference.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Sheckells's motion for summary judgment **[ECF No. 20] is DENIED**;

IT IS FURTHER ORDERED THAT the joint request for a settlement conference **[ECF No. 28] is GRANTED.** This matter is referred to a magistrate judge to schedule a mandatory settlement conference at the earliest available date.

DATED: July 13, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[45] *Id*.

[46] *Id*.

[47] ECF No. 20-2 at 2.

[48] A modification is "an alteration to something; a change or amendment." *Black's Law Dictionary* (10th ed. 2014).

[49] ECF No. 28.

[50] L.R. 16-5.